## Nicholson Coal Mining Co. v. Moulden.

(Decided April 26, 1911.)

### Appeal from Bell Circuit Court.

Mines and Mining—Coal Mines—Held—That as the Tennessee Statutes of 1903, under which appellee sued, relieved the mine owner of liability for the negligence of the mine foreman, and appellee failed to introduce in evidence an amendment to that Statute passed in 1907, which does make the mine owner liable for the

foreman's negligence, the court should have peremptorily instructed the jury to find for appellant. The record cannot be amended in this court by affidavits showing that proof of the amended act was made on the trial, but that the court. reporter failed to make it so appear in the bill of evidence.—Held—As the Tennessee Statutes requires that in operating a coal mine it is the duty of the owner thereof for the protection of the miners employed therein to supply the mine with not less than 85 cubic feet of pure air per minute each man, and not less than 500 cubic feet of pure air to each animal employed therein the jury should, on another trial, be so instructed instead of using the general expression that it is the owner's duty to at all times keep all working places in the mine supplied with pure air.

SAMPSON & SAMPSON, HELM BRUCE, M. H. RHORER and BRUCE & BULLITT for appellant.

CHAS. I. DAWSON, T. L. HENRITZ, ISHAM G. LEABOW, L. F. DeDUSK and GREENE, VANWINKLE & SCHOOLFIELD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, George Moulden, colored, recovered in the court below, of the appellant, Nicholson Coal Mining Company, a verdict and judgment for $3,000 damages, resulting from personal injuries caused, as alleged, by an explosion in its mine of inflammable gas which it had negligently permitted to accumulate therein. Appellant complains of the judgment and of the refusal of the circuit court to grant it a new trial, hence this appeal.

Appellant's coal mine in which appellee was injured, is situated in Claiborne county, Tennessee, and appellant was incorporated under the laws of that State. Appellee was at the time of the accident, has since been, and is now, a resident of Bell county, Kentucky, where the action was instituted, and the action was brought under the law of Tennessee.

It was abundantly shown by the evidence that the explosion badly burned appellee upon his face, hands and other parts of his body, and caused him much suffering. The burns on his face appear to have healed readily, but those upon the hands so drew and doubled the fingers as to prevent the hands from grasping or handling a pick, or other like implement, and left the skin so thin and tender that the least friction will lacerate it and make the hands bleed and become sore. It is, therefore, manifest from the evidence that appellee's injuries are of a permanent nature and such as to greatly impair his ability to perform manual labor, the only kind he is capable of performing. In

view of this disability, his age of forty-seven years, and the life expectancy appertaining thereto, the $3,000 recovered by him was not excessive, but only reasonable compensation, if he was entitled to recover at all.

It was appellee's contention that he was injured by an explosion of mine gas or mine dust, following a light blast he had set off in the room or entry where he was getting out coal as a miner in appellant's employ. It was appellant's contention that appellee's injuries were caused by his own negligence in making what is known in mining parlance as a "windy shot," that is, that in drilling for the blast appellee did not make the holes of sufficient depth, nor sufficiently tamp the powder in the holes, and that when touched off the resulting blast, instead of tearing out the coal, merely caused the powder to flash out of the drill holes, and he, being too near, was enveloped by the flames and burned.

The evidence failed to support appellant's theory. Appellee testified as to the preparation for the blast, and that it was properly done. He was not contradicted, for no other person saw the preparation, or the place of preparation. The fuse was lighted as he left the room to quit work for the day and leave the mine with the other hands. He had passed from the entry into which the room opened, turned a corner into another entry leading out of the mine, and reached a point between 30 and 40 feet from the place where the blast was touched off, when the explosion occurred, which enveloped him in flames and knocked him down. This testimony was also uncontradicted. Wm. Waite, a miner, who was at work in a room one hundred feet down the entry from the room in which appellee was working, testified that the blaze by which the latter was burned passed down the entry and beyond him and some of it entered the room where he was at work. He also was uncontradicted. According to the evidence the flame from a "windy" blast will extend only a few feet and one to be burned by it would have to be in close proximity to it; and it was impossible for it to extend 30 or 40 feet or to inflict injury at that distance.

It is patent, therefore, that appellee was not injured by a windy blast, nor did the evidence tend to show that his injuries were caused or contributed to by any negligence on his part. How, then, did he receive them?

Manifestly, by an explosion of mine gas caused by the blast. This theory presupposes the presence in the mine of the explosive gas or mine dust, which admittedly makes all mines in which it is generated dangerous. Several witnesses testified as to the nature of this dangerous gas and the manner in which it is produced. One of them, Robert Elwood, a miner of fifty years' experience, said he had frequently seen what are called "smoke explosions or combustions," which are caused by the accumulation of smoke or gas in mines resulting from the want of pure air; that such explosions never occur when the air is good and can not occur when a mine like that of appellant is supplied with 85 cubic feet per minute for each man and 500 cubic feet per minute for each animal employed in the mine. Another witness, Sam Anderson, a miner of 35 years' experience, testified with great elaborateness in coroboration of Elwood, as did others of less experience.

There was, therefore, much evidence to the effect that in mines not properly ventilated, there accumulates combustible or inflammable matter, consisting of unconsumed particles of dust, powder smoke and gas, which frequently ignites, producing explosions and flames which may be destructive of human life, without seriously injuring or obstructing the mine. It was in evidence that other blasts had been shot off by miners in rooms adjoining that in which appellee worked, a few minutes before his was fired; and that he and his fellow workmen had done other blasting at noon that day as was customary, such blasting being productive of a considerable quantity of powder smoke.

The evidence introduced by appellant was, in the main, directed to showing that its mine was properly ventilated by sufficient air-ways, break-throughs and intakes; a fan being operated at the mouth of the mine with approved machinery by which to draw by suction the foul air from the mine and cause to circulate through all parts thereof fresh air; that by this means the mine and all parts thereof were constantly furnished with fresh air in the ratio of 85 cubic feet per minute for each man employed and 500 cubic feet per minute for each animal worked therein: that appellant had an instrument for testing atmospheric conditions in mines, but it

was not proved that appellant's mine was subjected to such a test before and near the time of the explosion by which appellee was injured.

Appellee, through the testimony of one of his attorneys, made proof of the laws of Tennessee under which he sought to recover of appellant damages for his injuries; and the attorney introduced and read from the statutes of that State certain provisions establishing very stringent and elaborate rules and regulations for the inspection and operation of the mines of the State; the enforcement of these rules and regulations being placed in the hands of mine inspectors and assistant inspectors appointed by authority of the State. Among these regulations was one classifying the mines; another requiring inspection of them at intervals by the State Mine Inspector or his assistants; another requiring all mines to be ventilated; defining the kind of ventilation to be furnished each class and the quantity thereof; and yet another requiring that each mine owner should employ a mine boss or operator licensed after examination by the mine inspector to take charge of his mine, whose control of it should be complete and exclusive.

It is admitted both by appellant and appellee that appellant's mine is in class C.; that it had the right to employ and work twenty hands in mining coal, and that its proper ventilation required it to be provided with 85 cubic feet per minute of fresh air for each person employed therein and 500 cubic feet per minute for each animal worked therein. In enacting the foregoing rules and regulations the Legislature of Tennessee had in mind the danger attending the work of persons employed in mines and the necessity for throwing around them such safeguards as would reduce the danger to the minimum without oppressing the mine owner. In other words, the object of the statute is to compel all owners of mines situated in Tennessee to provide persons and animals employed in such mines reasonably safe places in which to perform the work required of them. Appellee insists that this was not done by appellant and that its failure in this regard consisted in its not providing proper ventilation for the mine which made his place of work unsafe and caused his injuries.

Notwithstanding the evidence introduced by appellant to prove its compliance with the above regulation

as to ventilation, proof of the presence in the mine of foul air and dangerous gas was furnished by the explosion itself. In addition, appellee's evidence conduced to prove that the place where he worked was in the entry most remote from the mouth of the mine, its main entry and air-ways; and that there was an obstruction in one of the air-ways leading from the entry and room in which he was working to the parallel entry next thereto and between his place of work and the mouth of the mine, which obstruction in large measure prevented the fresh air from passing from one entry to the other and impeded its circulation where appellee worked. It was also testified by appellee and at least two other witnesses that they had been, more or less, affected for several days prior to the explosion with headache, and that such aching of the head is caused by the presence in the mine of foul air or dangerous gasses.

The testimony of appellee and some of his witnesses also conduced to prove that the sound produced by the explosion was not of the character resulting from a mere powder blast, but was of louder report, more prolonged and attended by a rumbling sound; and that these features invariably accompany gas or mine dust explosions. In view of these facts it is apparent that appellant's contention that the evidence failed to show appellee's injuries were caused by an explosion of mine gas, can not be sustained.

But appellant's chief complaint is that the trial court erred in refusing its request for a peremptory instruction requiring the jury to find for it. It is insisted that the peremptory instruction was proper, indeed, necessary under the Tennessee statute upon which appellee based his right to recover damages of appellant, section 20 of which, required appellant to employ and keep in charge of its mine a mine foreman and defined the latter's duties. The statute contains this language:

"Provided further, That said mine foreman shall not be subject to the control of the operator or owner in the discharge of the duties required of said mine foreman by this act. It shall be the duty of the mine owner, or foreman, to see that the provisions of this section and the other duties herein defined are faithfully discharged and carried out; and in case of his or their failure to comply with such provisions, and upon conviction

he or they shall be subject to a fine of $100 each and imprisonment for the period of not less than ninety days at the discretion of the court.''

It appears from the bill of evidence that this statute was introduced by appellee and read to the jury by his attorney. The statute in question was enacted in 1903, but as appears from briefs of counsel was amended by the Legislature of that State in 1907. By the amendment the provision quoted above was repealed, and in lieu thereof the following provision enacted:

''Said mine foreman is hereby expressly declared to be the agent or representative of the operator or owner of the mine in the discharge of the duty required of said mine foreman by this act.''

Unfortunately for appellee's case it does not appear from the record that the amended act containing this vital change with reference to the mine foreman was introduced in evidence or read to the jury. It does, however, appear from the record that under a decision of the Supreme Court of Tennessee which the trial court had before it, viz: The Sale Creek Coal and Coke Company v. Jessee Priddy, 117 Tenn.,169, that court in construing the statute of 1903, held that section 20, in requiring the employment by the mine owner of a mine foreman, did not establish the relation of master and servant between them, and that the mine owner was not responsible in damages to one injured by the negligence of the foreman in the performance of his duties as such.

As appellee pleaded and relied upon the statute of Tennessee of 1903, and the burden was on him to prove its provisions as any other fact necessary to a recovery, and the record does not show proof of the amendment of 1907, it was clearly the duty of the trial court to grant the peremptory instruction at the conclusion of the evidence as requested by appellant, and the failure to do so was error that will compel a reversal of the judgment.

It is contended by appellee that the amendment of 1907 under which he would have been entitled to recover against appellant for the negligence of its mine owner was introduced in evidence and read to the jury, and he has filed in this court the affidavit of his attorney, who testified in the case, in an attempt to amend the record; but such an amendment can not be allowed by this court on the appeal. If, as claimed the official reporter by

whom the evidence was taken on the trial, by mistake, omitted from the bill of evidence the proof that was made of the amendment; the correction of the record should have been made in the court below at the term at which the bill of exceptions was filed, for it is manifest that the amendment of 1907 does make the mine owner responsible for the negligence of his mine foreman; but in the absence of proof of the amendment, it was the duty of the trial court to be governed by the act of 1903, and the construction thereof adopted by the Supreme Court of Tennessee as expressed in the case, supra, which was decided by that court before the enactment of the amendment of 1907. Appellee's only remedy, therefore, is to make proof of the amendment upon a retrial of the case following its return to the circuit court. It seems to be conceded in the briefs of counsel for appellant that if the case should have gone to the jury at all, only the first of the several instructions given by the trial court was objectionable. While the criticism of this instruction may be said to be technical, as the case must be retried, it will be proper for the circuit court in again instructing the jury to confine the duty of appellant in the matter of providing ventilation in the mine, to the supplying of that part of the mine where appellee was working with not less than 85 cubic feet of pure air to each man, and not less than 500 cubic feet of pure air to each animal employed in the mine, instead of using the general expression now contained in the instruction that it was its duty at all times to keep all working places in the mine so supplied with pure air.

For the reasons indicated the judgment is reversed and cause remanded for a new trial and for further proceedings not inconsistent with the opinion.